UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REMON A. SHIELDS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GREGORY J. AHERN, et al.,<br><br>　　　　　Defendants. | Case No. 16-cv-00331-JD<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 21 |

Plaintiff, a state prisoner proceeding pro se, has sued under 42 U.S.C. § 1983 for alleged interference with his ability to practice his religion in violation of the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Defendants filed a motion to dismiss on June 6, 2016. Plaintiff failed to file an opposition, but the motion was vacated without prejudice for defendants' failure to send the appropriate notices to plaintiff. Defendants filed a motion for summary judgment on January 23, 2017. Plaintiff has again failed to file an opposition or otherwise communicate with the Court. Plaintiff's last communication with the Court was a letter sent on May 18, 2016. The Court has still looked to the merits of the summary judgment motion, which is granted.

**BACKGROUND**

Plaintiff was sentenced to life in prison without parole on August 18, 1999, after being convicted of first degree murder. Motion for Summary Judgment ("MSJ") Ex. A at 3. Plaintiff was later resentenced to 25 years to life with the possibility of parole. *Id*. at 3, 29. As part of the resentencing process, plaintiff was temporarily transferred on July 27, 2015, to Santa Rita Jail where the relevant events alleged in the complaint occurred. MSJ Ex. B. Plaintiff was transferred

out of Santa Rita Jail and back to state prison on May 4, 2016.  MSJ Ex. C.

On July 29, 2015, plaintiff filed a grievance stating that he was a Muslim and required a Halal meal.  MSJ, MacKay Decl., Ex. D.  The jail responded that no specifically designated Halal meals were available, but alternatives such as vegetarian and kosher meals were available.  *Id*., Ex. E.  Plaintiff responded that a kosher meal would meet his religious and dietary requirements.  MSJ, Nobles Decl., at ¶ 4b.  Plaintiff was provided a vegetarian meal option from August 11, 2015, to February 5, 2016, and a kosher option beginning on February 5, 2016.  MSJ Ex. E; Nobles Decl., at ¶ 4b; McConnell Decl. at ¶ 3.  On February 20, 2016, plaintiff was observed giving his kosher meal to another inmate in return for a regular meal, and then plaintiff ate the regular meal.  Scheibner Decl. at ¶ 4.  This continued to occur after February 20, 2016, on at least ten to twenty occasions.  *Id*. ¶ 5.

On August 2, 2015, plaintiff filed a second grievance requesting that the jail hire a Muslim chaplain; offer Jumu'ah (group prayer) on Fridays and Ta'leem (group study) on Thursdays; provide prayer rugs, prayer oil and a kufi cap; and establish and maintain an Islamic book cart in each building.  MSJ Ex. F.  Jail officials responded on August 14, 2015 that:

- Jumu'ah services are provided by the facility; however, plaintiff's maximum security classification precluded his participation in group prayer;
- the jail contacted several local mosques requesting volunteer Imams and/or mosque members to provide one-on-one Jumu'ah and Ta'leem services to plaintiff and other similarly situated inmates; two volunteers committed their services but were unable to participate every week; plaintiff was asked to provide contact information for an Imam who would be willing to help;
- prayer rugs could be provided, but prayer oil was restricted for security concerns;
- plaintiff was provided a kufi cap;
- plaintiff could acquire Islamic reading materials by filling out a request form;
- Qurans and Islamic religious materials are provided to inmates by the chaplain and Muslim volunteers.

MSJ Exs. G, H; Johnson Decl. ¶¶ 2-3.  On August 24, 2015, plaintiff was granted permission to

perform Jumu'ah services every other Friday in his maximum security housing unit with a Chaplain present. MSJ, Nobles Decl. ¶ 5. Plaintiff was also provided a prayer rug. MSJ, Nobles Decl. ¶¶ 7-8; Johnson Decl. ¶ 5.

The jail operates a nondenominational chaplaincy to meet the needs of all faiths equally. MSJ Ex. G. Plaintiff personally met with the chaplain on several occasions to discuss his religious needs. MSJ, Nobles Decl. ¶¶ 1-2, 4-13.

On August 22, 2015, plaintiff filed a third grievance requesting to be allowed to receive packages from an Islamic vendor. MSJ Ex. I. Jail officials responded that the request was not clear and if plaintiff wanted specific vendors for items he needed to fill out a request and provide it to inmate services. MSJ Ex. J. Plaintiff was transferred out of Santa Rita Jail and back to state prison on May 4, 2016. MSJ Ex. C.

**LEGAL STANDARD**

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324

3

1 (citing Fed. R. Civ. P. 56(e) (amended 2010)).

For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Section 3 of RLUIPA provides: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 [which includes state prisons, state psychiatric hospitals, and local jails], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). The statute applies "in any case" in which "the substantial burden is imposed in a program or activity that receives Federal financial assistance." 42 U.S.C. § 2000cc-1(b)(1). RLUIPA also includes an express private cause of action that is taken from RFRA: "A person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a); cf. § 2000bb-1(c). For purposes of this provision, "government" includes, inter alia, states, counties, municipalities, their instrumentalities and officers, and "any other person acting under color of state law." 42 U.S.C. § 2000cc-5(4)(A).

In order to establish a free exercise violation, a prisoner must show a defendant burdened the practice of his religion without any justification reasonably related to legitimate penological interests. *See Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008). A prisoner is not required to objectively show that a central tenet of his faith is burdened by a prison regulation to raise a viable claim under the Free Exercise Clause. *Id*. at 884-85. Rather, the test of whether the prisoner's belief is "sincerely held" and "rooted in religious belief" determines the Free Exercise Clause inquiry. *Id*. (finding district court impermissibly focused on whether consuming halal meat is required of Muslims as a central tenet of Islam, rather than on whether plaintiff sincerely believed eating kosher meat is consistent with his faith). The prisoner must show that the religious practice at issue satisfies two criteria: (1) the proffered belief must be sincerely held and (2) the claim must be rooted in religious belief, not in purely secular philosophical concerns. *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (cited with approval in *Shakur*, 514 F.3d at 884).

A prison regulation that impinges on an inmate's First Amendment rights is valid if it is reasonably related to legitimate penological interests. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *see, e.g., Walker v. Beard*, 789 F.3d 1125, 1135-37 (9th Cir. 2015) (prison's classification of a white racist inmate as eligible to be housed with a person of a different race and its refusal to grant him an exemption did not violate Aryan Christian Odinist inmate's religious rights under the Free Exercise Clause because prison's policy was reasonably related to the penological interest in avoiding the legal liability of equal protection suits brought by other inmates). Security interests may require prisons to restrict attendance at religious services, but the inmates must be provided with an alternative means of meeting the need for those services. *See McCabe v. Arave*, 827 F.2d 634, 637 (9th Cir. 1987) (protective custody inmate can be denied permission to attend service of a particular denomination if he is permitted to attend interdenominational service).

**DISCUSSION**

Plaintiff seeks money damages and injunctive relief. Plaintiff was in custody at Santa Rita Jail when the allegations in the complaint occurred. After the resentencing was completed he was transferred back to state custody and is now incarcerated at a different institution. When an inmate is released from prison or transferred to another prison, and there is no reasonable expectation or demonstrated probability that he will again be subjected to the prison conditions from which he seeks injunctive relief, the claims for injunctive relief should be dismissed as moot. *Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995); *see also Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012) (same for claims for declaratory relief). A claim that an inmate who has been transferred and might be retransferred to the facility where the injury occurred is too speculative to overcome mootness. *See Dilley*, 64 F.3d at 1369; *Wiggins v. Rushen*, 760 F.2d 1009, 1010-11 (9th Cir. 1985). The fact that other inmates will continue to be subject to the allegedly improper policies also does not overcome mootness because those inmates can bring their own cases. *Alvarez*, 667 F.3d at 1065. In this case, plaintiff is in state custody at a prison and was only at the county jail when he was awaiting resentencing. Now that he has been resentenced, there is no reasonable expectation or demonstrated probability that he will again be transferred to the county jail. Plaintiff's claims for injunctive relief are denied.

Nor is plaintiff entitled to money damages for his RLUIPA and free exercise of religion claims. Defendants have met their burden in demonstrating that plaintiff's ability to practice his religion was not substantially or unjustly burdened. Even assuming that plaintiff can demonstrate that jail regulations burdened his practice of a sincerely held belief, the jail regulations were

5

reasonably related to legitimate penological interests, and the Court sees no genuine dispute of fact for trial.

### A. Halal Diet

The record shows that, immediately after plaintiff requested a halal diet, he was provided the vegetarian meal option and later was approved for kosher meals. It also shows that on many occasions plaintiff traded his kosher meal to other inmates and plaintiff then ate the normal meal. Defendants are entitled to summary judgment on this claim.

### B. Jumu'ah Services and Ta'leem Study Sessions

In light of plaintiff's maximum security classification, he was denied the ability to participate in group prayer with other detainees. Restricting plaintiff's ability to be with other detainees for the safety and security of all involved is a legitimate penological interest. The jail did allow plaintiff to perform Jumu'ah services every other Friday with a chaplain present. While plaintiff was denied some services due to security interests, alternative means were provided.

The record shows that plaintiff had access to and the ability to study the Quran and other necessary texts. It also shows that plaintiff had access to every other Friday Jumu'ah services and the ability for one on one meetings with an imam or volunteer mosque member. Defendants are entitled to summary judgment for these claims.

### C. Prayer Rugs, Prayer Oils and Kufi Cap

Plaintiff was provided a prayer rug and Kufi cap. To the extent there were delays in providing these items, they were minor and did not violate his constitutional rights. Defendants have shown that the ban on prayer oils is a legitimate penological interest. *See Riggins v Clarke*, 403 F. App'x 292, 295 (9th Cir. 2010) (prisoner failed to show the need for prayer oils and nothing in the record demonstrated that the lack of prayer oils substantially burdened the ability to practice his religion). Defendants are entitled to summary judgment on this claim.

### D. Book Carts and Islamic Vendor

Plaintiff requested an Islamic book cart in each building in the jail. The record shows that Islamic religious reading materials and Qurans were available to plaintiff through the chaplain or

jail library. Plaintiff had only to fill out a request and would be provided with the book.

Plaintiff also sought to purchase Islamic halal-certified food and personal hygiene products from an approved Islamic vendor. The jail did not allow inmates to purchase directly from an online vendor for obvious security reasons. It is also not clear if plaintiff was able to already obtain these items from the jail commissary, and why doing so would have interfered with the ability to practice his religion. Summary judgment is granted to defendants on this claim.

### E. Muslim Chaplain

The jail operated a nondenominational chaplaincy and a chaplain was available. Plaintiff personally met with the chaplain on several occasions. Moreover, the jail contacted several local mosques and coordinated volunteers to participate in religious activities. Defendants are entitled to summary judgment on this claim.

### F. Qualified Immunity

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Id*. at 205. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by *Saucier*). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Pearson*, 555 U.S. at 236.

Even if the Court were to find that defendants had deprived plaintiff of a constitutional

right, they would still be entitled to qualified immunity. The record demonstrates that defendants provided plaintiff with many ways to practice his religion and that defendants responded to plaintiff's requests with more opportunities to practice his religion. It would not be clear to a reasonable official that the various manners provided for plaintiff to practice his religion would be unlawful.

**CONCLUSION**

1. Defendants' motion for summary judgment (Docket No. 21) is **GRANTED**.

2. The Clerk shall terminate all pending motions, enter judgment, and close the file.

**IT IS SO ORDERED.**

Dated: August 8, 2017

JAMES DONATO
United States District Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REMON A. SHIELDS,<br>    Plaintiff,<br>v.<br>GREGORY J. AHERN, et al.,<br>    Defendants. | Case No. 16-cv-00331-JD<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on August 8, 2017, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Remon A. Shields ID: P64820
R.J. Donovan Corr. Facility
480 Alta Road
San Diego, CA 92179

Dated: August 8, 2017

                                          Susan Y. Soong
                                          Clerk, United States District Court

                                          By: /s/ Lisa R. Clark
                                          LISA R. CLARK, Deputy Clerk to the
                                          Honorable JAMES DONATO